```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JEROLE PIERRE,
                                                                    REPORT & RECOMMENDATION
                            Plaintiff,                              22 CV 1171 (NRM)(LB)
        -against-

POLICE OFFICER ALEXANDR YURCHENKO,
NEW YORK CITY,
LIEUTENANT ANGELIKA KAISER,

                            Defendants.
----------------------------------------------------------------X
```
**BLOOM, United States Magistrate Judge:**

Plaintiff Jerole Pierre brings this *pro se* action alleging that defendants violated his civil rights under 42 U.S.C. § 1983. Defendants move to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Honorable Nina Morrison referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendants' motion should be granted, and plaintiff's amended complaint should be dismissed.

## BACKGROUND

For the purposes of defendants' motion to dismiss, all well-pleaded allegations in plaintiff's amended complaint, ECF No. 43, are taken as true and all inferences are drawn in his favor.[1]

---

[1] The Court also considered plaintiff's exhibits containing documents relied on or incorporated by reference in his amended complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a court ruling on a motion to dismiss may consider documents provided by a defendant if "plaintiff has actual notice of all the information in the [defendant's] papers and has relied upon these documents in framing the complaint") (citation and quotation omitted); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) ("A complaint is deemed to include any written instrument attached to it as an exhibit or . . . documents incorporated in it by reference.") (citation and quotation omitted). Additionally, the Court considered factual allegations made in plaintiff's opposition papers. Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

1

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against defendants the City of New York, Police Officer Alexandr Yurchenko,[2] and Lieutenant Angelika Kaiser. Am. Compl., ECF No. 43 at 1. Plaintiff's complaint alleges that from 2018 through present, a group of unnamed, plainclothes New York Police Department ("NYPD") officers have subjected him to constant physical surveillance. Id. at 4-5, 8. Plaintiff alleges that these officers are members of the NYPD's Shomrim Society[3] and are employed in the 69th and 70th Precincts,[4] and that they collude with private citizens, such as plaintiff's neighbors,[5] to "constantly" surveil him. Id. at 4; 6-8. Plaintiff's two sons, one of whom is a police officer, also "play a part" in the surveillance because they have keys to plaintiff's home. Id. at 7.

Plaintiff claims that on multiple unspecified dates, the officers have stood on the street outside of his home and walked towards him when he came outside, id. at 6; gestured and laughed at him, id. at 8; and took photos of his property. Id. at 7. These officers, in collusion with plaintiff's neighbors, follow him in cars.[6] Id. at 6. One unnamed officer placed a tracking device on plaintiff's car. Id. at 9. In addition to the surveillance, "almost every other week," these officers or "someone

---

[2] Plaintiff's submissions spell Officer Yurchenko's last name as "Yurbherko." See ECF No. 43 at 1. The Court adopts defendants' spelling of Officer Yurchenko's name.
[3] Plaintiff refers to this organization as the "Shomrim Society Complain Unity NYPD, PSA4 130 Avenue." ECF No. 43 at 4. The Court takes judicial notice of the "Contact Us" page of the NYPD Shomrim Society's website, which lists its contact information as "Shomrim Society, Chaplains Unit NYPD, PSA 4, 130 Avenue C, New York, New York 10009." See Contact Us, NYPD Shomrim Society, https://www.nypdshomrim.org/contact-us/ (last accessed Jan. 25, 2024). The Shomrim Society is a "fraternal organization of Jewish members of the New York City Police Department." Id.
[4] Plaintiff also states that he "know[s]" these officers are federal agents. ECF No. 43 at 10.
[5] Plaintiff claims that one of these officers protects plaintiff's neighbor who is connected to the Jewish community, the Shomrim Society, a "neighbor policing group" and officers "such as Jacqueline Broune and Elliot of 1350 E. 103rd St. and Hamilton Michael." ECF No. 43 at 7. This neighbor approached plaintiff in a parking lot in Manhattan and threatened him on an unspecified date. Id.
[6] Plaintiff identifies various license plate numbers for these cars. In total, plaintiff provides eight license plate numbers in his amended complaint and opposition papers. Plaintiff provided two license plate numbers to the Office of Corporation Counsel ("Corporation Counsel") when the Court directed it to attempt to ascertain the officers' identities. See ECF No. 37 at 2.

who they have influence [over] comes with a new petty dispute to argue and threaten" plaintiff.[7] Id. at 5. These officers and plaintiff's neighbors tell unnamed people that plaintiff is a criminal.[8] Id. at 7. On March 12, 2020, an officer broke into plaintiff's car and deleted photos from his phone; plaintiff "spoke" about the incident to no result.[9] Id. at 6, 8. Plaintiff was "threatened and treated unfairly" when he filed reports and requested investigations of the officers' conduct. Id. at 4. Finally, on March 22, 2022 at 10:30 a.m., a "Lieutenant Simms" called plaintiff and told him that he would discard all of plaintiff's 911 calls from 2018 through present. Id. at 8.

Due to this "abuse of police authority" with citizens in his "neighborhood and larger community," plaintiff experiences a "deep feeling of injustice" and finds it "hard to lead a day-to-day life." Id. at 4, 5. He is afraid to leave his house, cannot go anywhere in Brooklyn "without being disrespected," and has had his employment "interrupted." Id. at 5, 7, 10; ECF No. 63 at 5.

Plaintiff's allegations against the named defendants in his amended complaint are more circumscribed than his claims regarding the unnamed officers. Plaintiff claims that on the afternoon of December 13, 2021, he called 911 to report a car following him, and that Officer Yurchenko responded to the call but "refused to question the suspect." ECF No. 43 at 7. Plaintiff alleges that he captured CCTV video of a plainclothes officer on his property, but that Lieutenant

---

[7] Plaintiff further alleges that the officers and their "cronies" followed and threatened plaintiff after a January 2, 2023 court conference. ECF No. 43 at 8. The Court notes that it held conferences in this action on October 18, 2022 and February 1, 2023, but not on January 2, 2023.

[8] Plaintiff alleges that the officers tell people that he violated an unnamed woman, and that "if they can't find the woman they will plant evidence to incriminate" plaintiff. Id. at 8. Due to this "constant slander," plaintiff was refused notary services at a law office and entry to a doctor's office. Id. at 7-8. Plaintiff filed a complaint with the Office of Professional Medical Conduct (OPMC) regarding the latter incident and attaches a letter from the OPMC informing him that his complaint does "not warrant action." Id. at 12.

[9] Plaintiff does not allege any further information about this complaint. However, he attaches a February 9, 2022 letter from the Civilian Complaint Review Board ("CCRB") issued in response to plaintiff's complaint that an officer searched a vehicle that he was in, searched his recording device, and deleted information off of his electronic device. Id. at 17. The CCRB concluded that the officers were "unidentified." Id. The Court takes judicial notice of the CCRB's "Case Outcomes" guidance, which explains that a CCRB finding of "Officer(s) Unidentified" indicates that the agency was "unable to identify the officers who committed the alleged misconduct" based on the evidence provided. See Civilian Complaint Review Board, Case Outcomes, https://www.nyc.gov/site/ccrb/investigations/case-outcomes.page (last accessed Feb. 6, 2024).

Kaiser did not identify the officer from a still image from this video.[10] Id. at 5; ECF No. 63 at 5. Plaintiff further claims Lieutenant Kaiser directs the unnamed officers to follow and surveil him. ECF No. 63 at 9.

Plaintiff alleges that defendants violated his Constitutional rights under the First, Fourth, and Fourteenth Amendments. ECF No. 43 at 9. Plaintiff seeks $48,000,000, as well as "relief from consistent surveillance" and an injunction preventing the officers from "slander[ing]" plaintiff and interrupting his employment. Id. at 10.

## PROCEDURAL HISTORY

Plaintiff filed the complaint in this action on March 1, 2022. ECF No. 1. Plaintiff moved for leave to proceed *in forma pauperis* on that date, but subsequently paid the filing fee to commence this action on June 22, 2022. ECF No. 5. The Court issued summonses for the named defendants, ECF No. 7, and informed plaintiff that he was responsible for serving defendants with the summonses and complaint. Plaintiff was directed to file proof of proper service on defendants by October 9, 2022.[11] ECF No. 10.

Plaintiff requested leave to amend his complaint to include a John Doe defendant in March 2022, and again in August 2022.[12] ECF Nos. 4, 12. The Court informed plaintiff that he may amend his complaint as of right as he had not yet served defendants. ECF No. 15. However, plaintiff's

---

[10] Plaintiff's amended complaint does not name John Doe officers. However, as plaintiff named John Doe officer defendants in earlier proposed amended complaints, the Court ordered Corporation Counsel to identify the officers pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) (per curiam). In their memorandum in support of the instant motion, defendants note that Lieutenant Kaiser assisted Corporation Counsel in their efforts to identify the officers, and that Lieutenant Kaiser's name was included in a report of that investigation provided to plaintiff. ECF No. 58 at 8.
[11] Plaintiff requested an extension of time to serve defendants 40 days before this deadline. ECF No. 14. The Court denied the request as premature. ECF No. 15.
[12] Plaintiff's proposed amended complaint from August, ECF No. 12, appears to be a typewritten copy of the proposed amended complaint from March, ECF No. 4, which was handwritten. Both amended complaints allege that plaintiff called 911 to report that a white car parked across the street from his home was surveilling him, but that Officer Yurchenko did not investigate or make a police report. Plaintiff also alleges that a plainclothes officer put a tracking device on his car.

proposed amended complaints provided no information to identify the John Doe officers, and failed to allege how the named defendants violated his rights. Id. The Court advised plaintiff of these deficiencies and directed him to file a new amended complaint by October 10, 2022.[13] Id.

On September 27, 2022, plaintiff requested leave to amend his complaint to include the City of New York as a defendant. ECF No. 16. The Court set a conference for October 18, 2022 to discuss plaintiff's proposed amended complaint, and directed the Office of Corporation Counsel of the City of New York ("Corporation Counsel") to appear as an interested party. ECF No. 17.

Before the conference, plaintiff filed numerous documents, including (1) proof of service of process on defendants, ECF No. 19; (2) an amended complaint, ECF No. 21; (3) another amended complaint, ECF No. 23; and (4) five letters to the Court. ECF Nos. 18, 20, 22, 26, 27. At the October 18, 2022 conference, plaintiff informed the Court that his letters included photographs of the John Doe officer he sought to sue, as well as the license plate numbers for the unmarked police vehicles he alleges follow him. The Court issued an Order pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d Cir. 1997) (per curiam) directing Corporation Counsel to ascertain whether the individuals in plaintiff's photographs are NYPD officers and whether the license plate numbers belonged to NYPD vehicles by November 9, 2022. ECF No. 25

On November 9, 2022, Corporation Counsel requested, with plaintiff's consent, additional time to respond to the Court's Valentin Order. ECF No. 29. Corporation Counsel had requested that the NYPD run a database search for the license plate numbers, and obtained additional details from plaintiff as to the date, time, and location in which his photographs were taken, because "the subjects in the photographs are wearing masks and the photos themselves are in varying degrees of clarity." Id. The Court granted an extension to December 9, 2022. ECF No. 30.

---

[13] The Court also provided plaintiff with information regarding the Federal Pro Se Legal Assistance Project.

Corporation Counsel then requested a second extension of time. ECF No. 31. At that point in its investigation, Corporation Counsel had spoken with the officer who responded to plaintiff's 911 call on December 13, 2021; reviewed body-worn camera video from the officer and his partner; and confirmed that one of the two license plates is registered to a private citizen. Id. Plaintiff had provided Corporation Counsel with the dates that the photographs of the individuals were taken. Id. Corporation Counsel noted that plaintiff had made a police report about one of those individuals on April 2, 2021, but "no information about the identity of the person was provided." Id. Corporation Counsel provided copies of the photographs to the NYPD. Id. The Court granted another extension for defendants to respond to the Court's Valentin Order to January 9, 2023.

On December 27, 2022, plaintiff requested that the Court vacate its Valentin Order and grant plaintiff "more time so that [plaintiff] can try to identify John Doe himself." ECF Nos. 33, 34. The Court denied the request, as the Court's Valentin Order did not prevent plaintiff from undertaking such efforts.[14] ECF No. 35.

On January 9, 2023, Corporation Counsel requested to be relieved of its obligation to identify the John Doe officer because it "exhausted all options available that could be used to do so." ECF No. 37. Corporation Counsel reported that both license plates provided by plaintiff "are registered to private citizens not connected or affiliated with the New York City Police Department." Id. Moreover, the "Integrity Control Officer" at the 69th Precinct was "unable to recognize and cannot identify" the people in the photographs plaintiff provided. Id.

The Court held a status conference on February 1, 2023. ECF Nos. 38, 40. The Court relieved Corporation Counsel of its obligation to identify the John Doe officer, and granted

---

[14] On January 6, 2023, plaintiff moved for an extension of time to complete discovery. ECF No. 36. The Court denied plaintiff's request, as discovery had not yet commenced. ECF No. 38.

plaintiff until March 9, 2023 to file an amended complaint that identifies the John Doe defendant(s). ECF No. 41.

On March 9, 2023, plaintiff filed an amended complaint—the operative pleading in this action—that named three defendants but that did not otherwise identify any John Doe officers.[15] ECF No. 43. Defendants moved to dismiss plaintiff's amended complaint on May 12, 2023. ECF No. 57. Judge Morrison referred the motion to me for a Report and Recommendation, and the Court set a briefing schedule. ECF No. 60.

One week before plaintiff's opposition was due, he requested leave to file another amended complaint, but did not attach a proposed amended complaint to his request. ECF No. 61. The Court denied the request without prejudice, extended the time for plaintiff to oppose defendants' motion to July 14, 2023, and directed plaintiff to file any new motion to amend the complaint, attaching the proposed amended complaint, by that date. ECF No. 62. On June 16, 2023, plaintiff filed a document labeled as an "affidavit in reply" to defendants' motion to dismiss. ECF No. 63. Plaintiff did not move to amend his complaint, and later withdrew his request for leave to do so. ECF No. 65. The Court advised plaintiff that it construed his "affidavit in reply" as his opposition to defendants' motion to dismiss. ECF No. 66. Defendants filed a reply on August 4, 2023. ECF No. 67.

## DISCUSSION

### I. Standard of review

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly,

---

[15] Plaintiff also requested an Order under the Freedom of Information Act directing the "NYPD Shomrim Society" and the "Police Department Legal Bureau" to provide plaintiff with a picture of all its officers and their names. ECF No. 44. The Court denied the request. Id.

550 U.S. 544, 555–56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with" a defendant's liability or "speculative," Twombly, 550 U.S. at 555–56; they must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Nevertheless, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citation omitted)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted)).

Defendants move to dismiss plaintiff's amended complaint for failure to state a claim, on the grounds that plaintiff has not plausibly alleged that the named defendants violated his rights, that the City is not liable under Monell v. Dep't of Soc. Servs., 438 U.S. 658 (1978), and that plaintiff fails to state a plausible claim that defendants conspired to violate his rights. ECF No. 58 at 6. For the reasons discussed below, defendants' motion should be granted, and plaintiff's amended complaint should be dismissed.

## II. Section 1983 claims against unnamed officers

There are three defendants in this action: Officer Yurchenko, Lieutenant Kaiser, and the City of New York. However, most of plaintiff's allegations regarding surveillance and defamation are not attributed to these defendants, but rather, to a group of unnamed officers. As an initial matter, the Court should dismiss plaintiff's claims relating to allegations against the unnamed officers.

To state a claim for a civil rights violation under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was committed by a person acting under color of state law and (2) that such conduct "deprived [plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). As such, a plaintiff must allege which individuals violated his rights and how each person did so, and may not "rely on a group pleading against all defendants without making specific individual factual allegations." Spring v. Allegany-Limestone Cent. Sch. Dist., 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015), aff'd in part, vacated in part, remanded, 655 F. App'x 25 (2d Cir. 2016); see also Ying Li v. City of New York, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); LaPietra v. City of Albany Police Dep't, No. 19-CV-1527, 2020 WL 5891888, at *9 (N.D.N.Y. Oct. 5, 2020), report and recommendation adopted, 2020 WL 7021589 (N.D.N.Y. Nov. 30, 2020) (explaining that general references to "the police" or "officer" do not "state a claim against a 'person' as required in § 1983 actions").[16] Instead, plaintiff must allege how "each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662,

---

[16] The Clerk of Court is respectfully directed to send plaintiff the attached copies of the unreported cases cited herein.

676 (2009); see also Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).

Plaintiff's amended complaint is mostly focused on a group of unnamed, plainclothes officers affiliated with a fraternal organization of Jewish NYPD members, who plaintiff claims have surveilled him in collusion with private citizens for the past five years. Plaintiff alleges that on unspecified dates, the officers stood outside of his home, walked towards him, gestured and laughed at him, took photos of his property, followed him in cars, placed a tracking device on his car, told unnamed people he was a criminal, threatened him, and on one occasion, broke into his car and deleted photos from his phone. However, plaintiff does not identify any individual responsible for this conduct.[17] See Paige v. New York City Police Dep't, No. 10-CV-3773, 2012 WL 1118012, at *4 (E.D.N.Y. Mar. 30, 2012), aff'd sub nom. Paige-El v. Herbert, 735 F. App'x 753 (2d Cir. 2018) (dismissing plaintiff's claims of "continued physical surveillance by unnamed and unidentified police officers located near her workplace or home" where plaintiff did not identify "any defendant officer in connection with this claim so as to allow the suit to proceed against any specific individual").

Nor does plaintiff provide information by which the unnamed officers could be identified. As prior iterations of plaintiff's complaint named John Doe defendants, the Court directed Corporation Counsel to attempt to ascertain the officers' identities using the photographs and license plate numbers plaintiff provided. Corporation Counsel attempted to identify the officers

---

[17] Aside from plaintiff's allegations against Officer Yurchenko and Lieutenant Kaiser, plaintiff's only other reference to a particular officer is that a "Lieutenant Simms" called him on March 22, 2022 and told him that he would "proceed to discard" all of plaintiff's 911 calls "from 2018 through present." ECF No. 43 at 8; ECF No. 63 at 11. However, even if this allegation would state a plausible claim, plaintiff does not name Lieutenant Simms as a defendant in this action.

over the span of four months. However, the office was unable to do so.[18] The Court relieved Corporation Counsel of its Valentin obligation after Corporation Counsel confirmed that the license plate numbers plaintiff provided belonged to private citizens and that the individuals in plaintiff's photographs could not be identified as NYPD officers.

Plaintiff's amended complaint still contains claims of surveillance by a group of unnamed officers and private citizens,[19] but plaintiff does not plead any individual defendant's personal involvement in the alleged conduct.[20] As such, the amended complaint fails to state a claim against the unnamed officers. See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)

---

[18] Even if plaintiff's amended complaint had named John Doe defendants, the claims would still warrant dismissal at this stage in litigation. See, e.g., Bishop v. City of New York, No. 13-CV-9203, 2016 WL 4484245, at *3 (S.D.N.Y. Aug. 18, 2016) ("[F]ollowing Valentin, if a plaintiff is unable to identify defendants after being afforded the opportunity for limited discovery with assistance from the Court, his claims must be dismissed.").

[19] Defendants construe plaintiff's allegations of collusion with private citizens to raise conspiracy claims under 42 U.S.C. §§ 1983 and 1985. ECF No. 58 at 20. However, plaintiff fails to plausibly allege conspiracy under either statute. To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 387 (S.D.N.Y. 2013) (citation omitted). Under 42 U.S.C. § 1985, a plaintiff must allege: "(1) a conspiracy; (2) the purpose of which was to deprive a person or class of persons of equal protection of the laws or of equal privileges or immunities under the law; (3) actions by the defendants in furtherance of the conspiracy; (4) injury to plaintiff's person or property or deprivation of a right as a result of these actions; and (5) class-based discriminatory animus." Little v. City of New York, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007). Complaints containing "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.'" McDaniel v. City of New York, 585 F. Supp. 3d 503, 521 (S.D.N.Y. 2022) (citation omitted). Under both statutes, a plaintiff must "provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." Adams v. City of New York, No. 21-CV-3956, 2023 WL 2734611, at *6 (E.D.N.Y. Mar. 31, 2023) (citation omitted). Plaintiff provides no plausible claims of a conspiracy. The amended complaint is entirely devoid of facts to support an inference that any of the defendants— or the non-party unnamed officers—entered into an agreement to violate his rights. See, e.g., De'Bey v. City of New York, No. 20-CV-1034, 2021 WL 8013765, at *14 (S.D.N.Y. Oct. 26, 2021) (dismissing conspiracy claims where plaintiff failed to allege "any objective factual basis from which the Court can properly infer a meeting of the minds"), report and recommendation adopted, 2022 WL 909790 (S.D.N.Y. Mar. 29, 2022).

[20] Even if plaintiff had identified the officers, plaintiff does not allege a constitutional violation in connection with his claims that the officers stood outside his home or followed him in cars. The Fourth Amendment protects only "object[s] or area[s] where one has a subjective expectation of privacy that society is prepared to accept as objectively reasonable." United States v. Hayes, 551 F.3d 138, 143 (2d Cir. 2008). "What a person knowingly exposes to the public is not protected by the Fourth Amendment." Paige, 2012 WL 1118012, at *4 (citing Katz v. United States, 389 U.S. 347, 351 (1967)). As such, surveillance conducted outside one's home or on public streets does not violate the Fourth Amendment. Id. ("Because the unidentified police officers conducted their surveillance of Plaintiff's activities and movement while such officers were physically located in public places such as Plaintiff's workplace or public streets adjacent to or near Plaintiff's home . . . none of the alleged activities has violated Plaintiff's Fourth Amendment right to privacy.").

(upholding dismissal of complaint that "lump[ed] all the defendants together" and "provid[ed] no factual basis to distinguish their conduct" after plaintiff was afforded several opportunities to amend the complaint); Williams v. 120 PCT Undercover, No. 11-CV-4690, 2011 WL 13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing *pro se* plaintiff's complaint that alleged "unnamed undercover police officers used excessive force" but did not identify any particular defendants).

### III.  Claims against Officer Yurchenko and Lieutenant Kaiser

The amended complaint also fails to state a claim against the named defendants. Plaintiff alleges that Officer Yurchenko responded to a 911 call that plaintiff placed to report a car following him, but Yurchenko "refused to question the suspect."[21] ECF No. 43 at 7. Plaintiff claims that Lieutenant Kaiser failed to identify an alleged plainclothes officer on his property based on a still image from CCTV video that plaintiff provided during this litigation. Id. at 5; ECF No. 63 at 5.

However, plaintiff fails to allege that these officers violated his constitutional rights. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid[.]"). A government official's failure to investigate a reported crime does not amount to a constitutional deprivation. See, e.g., Bernstein v. New York, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) ("[T]here is no constitutional violation where the government refuses to investigate a crime[.]"). This includes a police officer's failure to respond to a civilian report or to conduct an investigation. See Harrington v. County of Suffolk, 607 F.3d 31, 34-5 (2d Cir. 2010) (concluding that there is no entitlement to a police investigation); Star v. Burlington Police Dep't, 189 F.3d 462 (2d Cir. 1999) (holding that plaintiff's

---

[21] Plaintiff also states that "the same department officer mentioned above like Officer Alexandr Yurbherko [sic] and a few neighbors all [colluded] and [surveilled] the plaintiff by following the plaintiff with cars," and requests relief from Yurchenko's "constant surveillance." ECF No. 43 at 6, 10. However, plaintiff provides no factual support for these conclusory statements, nor does plaintiff state that Officer Yurchenko is one of the plainclothes officers who he alleges surveil him. As such, these allegations cannot withstand defendants' motion to dismiss. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

allegation that the police failed to respond to her complaints did not state a valid due process claim); Adeniji v. New York City Police Dep't, No. 21-CV-0664, 2023 WL 1869011, at *6 (S.D.N.Y. Feb. 7, 2023) (dismissing allegations that claims of police misconduct were not investigated); Buari v. City of New York, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[A] failure to investigate is not independently cognizable as a stand-alone claim under Section 1983.") (quotations and citation omitted); Cotz v. Mastroeni, 476 F. Supp. 2d 332, 363 (S.D.N.Y. 2007) ("[T]he Fourteenth Amendment does not impose an affirmative obligation upon the police to take action against an alleged perpetrator in response to a civilian report."). As such, the Court should grant defendants' motion to dismiss plaintiff's claims against Officer Yurchenko and Lieutenant Kaiser.

### IV. Claims against the City of New York

Plaintiff's claims against the City of New York should be dismissed because plaintiff does not allege the existence of a municipal policy or custom that violated his constitutional rights.

To hold a municipality liable for an alleged constitutional violation under 42 U.S.C. § 1983, a plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) (citing Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)). The amended complaint contains no allegations that could be liberally construed to plausibly claim the City of New York maintained an official policy or custom that caused a violation of plaintiff's rights.[22] Plaintiff does not allege the existence of any formal policy; any action by a government official responsible for establishing the City's policies; any widespread practice; or any failure to provide

---

[22] While plaintiff's opposition cites Floyd v. City of New York, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), plaintiff does not allege that he was subjected to racial profiling or an unconstitutional stop. Plaintiff's threadbare statements that officers are "constantly stopping" him and that he has suffered "many stops and unlawful detention" are not supported by his amended complaint. Plaintiff's pleadings and opposition papers do not establish any basis for municipal liability. ECF No. 63 at 7, 11, 13.

13

training or supervision that could give rise to the City's liability. See McDaniel v. City of New York, 585 F. Supp. 3d 503, 513 (S.D.N.Y. 2022) (listing the ways that a plaintiff can demonstrate the existence of a policy or custom to plead municipal liability under 42 U.S.C. § 1983).

Plaintiff's allegations that the unnamed officers are employed by the City under the direction of Lieutenant Kaiser and Officer Yurchenko are insufficient to sustain a claim against the City. ECF No. 63 at 9. A municipality cannot be held liable under 42 U.S.C. § 1983 solely because it employed the defendants. See, e.g., Paige, 2012 WL 1118012, at *2 ("[I]t is well-established that a municipality may not be held liable under § 1983 for the actions of its employees based on a theory of *respondeat superior*.") (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694-95 (1978)).

Finally, as discussed above, plaintiff has not plausibly alleged an underlying constitutional violation for which the City could be liable. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (explaining that municipal liability under 42 U.S.C. § 1983 requires the plaintiff to show that he suffered an underlying constitutional injury). As such, the Court should grant defendants' motion to dismiss plaintiff's claims against the City of New York.

## V.     Leave to amend

"Ordinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely, however, courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." Kimmel v. New York State Assembly, No. 20-CV-1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing Cruz v. Gomez, 202 F.3d 593, 597–98 (2d Cir. 2000)).

Here, the Court explicitly afforded plaintiff leave to file an amended complaint to address the identified defects in his complaint on three separate occasions. See ECF Nos. 15, 41, 62. The

Court also directed Corporation Counsel to attempt to ascertain defendants' identities pursuant to <u>Valentin</u>. Plaintiff sought further leave to amend his complaint after defendants filed the instant motion, but he later withdrew the request. Under these circumstances and at this stage in the litigation, further leave to amend would be futile. <u>See, e.g.</u>, <u>Harris v. Westchester Cnty. Med. Ctr.</u>, No. 08-CV-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011) (dismissing *pro se* plaintiff's action without leave to amend where plaintiff had "already amended his complaint three times after being informed of the deficiencies in his original complaint"). I therefore respectfully recommend that no further leave to amend should be granted.

## CONCLUSION

*Pro se* plaintiff seeks to hold a group of unnamed plainclothes officers liable for constantly surveilling him and defaming him together with plaintiff's neighbors, children, and other private citizens. The Court afforded plaintiff multiple opportunities to identify the defendants and state what each one did or failed to do that violated his rights. Plaintiff's amended complaint names three defendants but fails to plausibly allege that the defendants violated his constitutional rights. Accordingly, it is respectfully recommended that the Court should grant defendants' motion to dismiss.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physicians' Health Plan, Inc.</u>, 293

F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                                      /S/
                                      LOIS BLOOM
                                      United States Magistrate Judge

Dated: February 20, 2024
       Brooklyn, New York